ing sentences of the eighteenth section exhibit this distinction. We do not think so. The preceding part of that section, enumerates offences which may be committed by any person intrusted with the mail, or with the letters to be carried by the post, and in that part, the offenders are described in general terms. The concluding sentences, enumerate offences which can be committed only by the person carrying the mail, and in those sentences, he is mentioned particularly. The nineteenth section, too, enumerates particularly the offences which may be committed, and, in the recital, mentions both the mail-carrier and the post-office. This distinguishes them from each other, but does not indicate that either is not comprehended in the general. terms of the eighteenth section. Those general terms are not introduced in the nineteenth section, nor was it necessary that they should. Their absence no more proves that a mail-carrier is not employed in any of the departments of the general post-office, than that the person who receives the mail or delivers out the letters, is not so employed.

The counsel also supposes that section 2. distinguishes between a person employed in the departments of the general post-office, and a mail-carrier. But we cannot concur in this opinion. The language is, "That the postmaster-general, and all other persons employed in the general post-office, or in the care, custody, or conveyance of the mail, shall, &c." It is obvious that this section, in using the terms "persons employed in the general post-office," designates the general post-office itself, and uses a phrase more limited, and intended to be more limited, than the phrase "any person employed in any department of the general post-office." It excludes persons employed in the particular post-offices established in the several states. These are comprehended by the words. "care or custody" of the mail. These words comprehend all persons who have the "care or custody" of the mail, and are not comprehended by the words, "other persons employed in the general post-office." But the separate enumeration of individuals in this section, no more proves that the one, than that the other is not comprehended within the general term which designates them all. It no more proves that the person carrying the mail is not employed in any of the departments of the general post-office, than it proves that a person having the care or custody of the mail in a particular post-office, is not within any of those departments. The decisions of the English courts, showing the strict construction which has been given to the law, will not apply to this case, because we think a mail-carrier is within the very words of the eighteenth section of the act of congress.

Motion in arrest of judgment overruled, and the prisoner. sentenced to imprisonment for seven years.

## Case No. 14,564.

### UNITED STATES v. BELL.

[1 Cranch, C. C. 94.] [1]

Circuit Court, District of Columbia. Nov. Term, 1802.

#### WITNESS—SLAVE—FREE MULATTO.

A slave may be a witness on a prosecution against a free mulatto, in Alexandria county.

Indictment for stealing. Slaves were permitted to be sworn on the part of the United States against the prisoner [Betty Bell, alias Mullican, a free mulatto]. Old Acts Va. 348; Code 1792, pp. 199, 200; Act 1801, Jan. 21, § 4.

=====

## Case No. 14,565.

### UNITED STATES v. BELL.

[Gilp. 41.] [2]

District Court, E. D. Pennsylvania. Feb. 17, 1829.

#### CONSULS — OFFICIAL BOND — CONSULAR DUTIES — ACTION FOR MONEY NOT ACCOUNTED FOR.

1. The surety of a consul for the faithful discharge of his duties, and for his truly accounting for all moneys coming into his possession by virtue of the act of 14th April, 1792 [1 Stat. 254], is not responsible on account of moneys remitted to him for purposes not comprehended within his consular duties, as prescribed by that act.

[Cited in brief in State v. McFetridge (Wis.) 54 N. W. 3.]

2. In a suit by the United States against a surety, in an official bond, the burden of proof lies upon them, to show that the principal failed to discharge the duties of his office.

This was a suit on a bond dated on the 19th June, 1806, in which Maurice Rogers was the principal, and William Bell his surety. It appeared that Maurice Rogers had been appointed a consul of the United States in a foreign port. and the condition of this bond was, "that. he should faithfully discharge the duties of his office, according to law, and also truly account for all moneys, goods and effects, which should come into his possession, by virtue of the act of congress concerning consuls and vice-consuls."

Mr. Ingersoll, U. S. Dist. Atty.
Mr. Binney, for defendants.

The question substantially was, whether Maurice Rogers had truly accounted for all moneys received by him as consul. It appeared that he had received from the treasury of the United States, by several payments, the sum of three thousand and fifty-two dollars and sixteen cents, and he was credited with disbursements to the amount of one thousand three hundred and ninety-eight dollars and seventy-eight cents. The suit was brought for the balance with interest. It was contended, on the part of the defendants, [Joseph Bell and William J. Bell, executors of William Bell,] that the money,

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Henry D. Gilpin, Esq.]